IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN (JACKSON) DIVISION

**SALLY MAE MCKINNEY**                                               **PLAINTIFF**

**V.**                          **CIVIL ACTION NO.  3:13CV900 HTW-LRA**

**CAROLYN W.  COLVIN,**
**ACTING COMMISSIONER OF SOCIAL SECURITY          DEFENDANT**

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Sally Mae McKinney appeals the final decision denying her applications for Disability Insurance Benefits, Supplemental Security Income, and Disabled Widow's Benefits.  The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge.  Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that the decision be affirmed.

**Factual and Procedural Background**

On June 4, 2009, McKinney filed applications alleging she became disabled on May 16, 2009, due to an inability to walk because of a stroke resulting from too much medication in her system.  At the hearing before the ALJ, she also claimed headaches, seizure disorder, hypertension, depression, and leg and chest pain.  She was 52 years old at the time of filing, and has a 10th grade education, with no past relevant work experience that rises to the level of substantial gainful activity.  The applications were denied initially and on reconsideration.  McKinney appealed the denial and on February

22, 2011, Administrative Law Judge Frederick McGrath ("ALJ") rendered an unfavorable decision finding that Plaintiff had not established a disability within the meaning of the Social Security Act.  The Appeals Council denied Plaintiff's request for review.  She now appeals that decision.

Upon reviewing the evidence, the ALJ concluded that Plaintiff was not disabled under the Social Security Act.  At step one of the five-step sequential evaluation,[1] the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date.  At steps two and three, the ALJ found that although Plaintiff's seizure disorder, headaches, hypertension, obesity, and a history of stroke were severe, they did not meet or medically equal any listing.  At step four, the ALJ found that Plaintiff had the residual functional capacity to perform light, unskilled work, except she cannot work around unprotected heights or around dangerous machinery.  Based on vocational expert testimony, the ALJ concluded at step five, that given Plaintiff's age, education, work experience, and residual functional capacity, she could perform work as a bench assembler, electrical accessories assembler, and electrode cleaner.

---

[1]Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

**Standard of Review**

Judicial review in social security appeals is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d at 295 (5th Cir. 1992)). This Court may not re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

**Discussion**

Plaintiff primarily argues on appeal that the Commissioner's decision should be reversed or alternatively remanded because the ALJ (1) failed to find that her depression was a medically severe impairment at step two of the sequential evaluation; (2) failed to apply the proper legal standards in considering the medical opinion evidence; (3) and, failed to consider all of her impairments in assessing her residual functional capacity. The Court rejects these arguments for the reasons that follow.

**1.     Whether substantial evidence supports the ALJ's finding that Plaintiff's depression was not a severe impairment.**

Although Plaintiff failed to assert depression as a disabling impairment in her applications, she alleges that the ALJ failed to adequately analyze her mental impairment at step two of the sequential evaluation. McKinney argues first that under 42 U.S.C. § 421(h),[2] the ALJ was required to obtain a mental health professional's review of her allegations of depression following the Commissioner's failure to obtain a review at the initial level. *See also* 20 C.F.R. § § 404.1503(e), 416. 903(e). Yet, a plain reading of the regulation in its entirety reflects that an ALJ is not subject at the hearing level to the purview of 421(h), and therefore not required to "employ the assistance of a qualified psychiatrist or psychologist in making an *initial* determination of [a] mental impairment." *Plummer v. Apfel*, 186 F.3d 422, 433 (3rd Cir. 1999)(emphasis added); 42 U.S.C. § 421 (d). An ALJ is governed by 42 U.S.C. § 421 (d).

To the extent Plaintiff contends that the ALJ should have ordered a consultative mental health examination to evaluate her depression at the hearing level, the ALJ's duty

---

[2] 42 U.S.C. § 421(h) governs the Commissioner's evaluation of mental impairments by qualified medical professionals at the initial determination phase and provides as follows:

> An initial determination under subsection (a), (c), (g), or (i) of this section that an individual is not under a disability, in any case where there is evidence which indicates the existence of a mental impairment, shall be made only if the Commissioner of Social Security has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment.

42 U.S.C. § 421(h).

to obtain a consultative examination is triggered when the evidence is insufficient to make an informed decision.  20 C.F.R. § 416.912; *see also Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984).  The duty is discretionary and must be balanced against the fact that the claimant bears the burden of proof through step four of the evaluation process.  *Brock*, 84 F.3d at 728; *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).  As set forth below, sufficient evidence was present here.

Plaintiff also cites as error the ALJ's failure to complete a Psychiatric Review Technique Form, as required by 20 C.F.R. § 1520(a).  While she acknowledges that the ALJ applied the psychiatric review technique in assessing the severity of her depression, she nonetheless maintains that the ALJ erred in failing to complete the Psychiatric Review Technique Form.  Social Security regulations require that when evaluating the severity of mental impairments, a psychiatric review technique form should be completed during the initial and reconsideration phases of the administrative review process. 20 C.F.R. § 1520a(e); 20 C.F.R. § 416.920(a).  The technique, which must be incorporated in the ALJ's findings, rates the degree of functional limitation in four broad areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  20 C.F.R. §§ 1520a(c), 920a(c).  *Id*.  "In the Fifth Circuit, however, an ALJ's failure to complete a psychiatric review technique *form* is a procedural error that does not require remand, provided the error has not affected a party's substantial rights."

5

*McGehee v. Chater*, 1996 WL 197435, at *3 (5th Cir. Mar.21, 1996) (unpubl.)(emphasis added) *(*citing *Maya v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1984)).  McKinney's substantial rights were not affected here.

In determining that Plaintiff's depression was not severe, the ALJ's decision cites and applies the correct standard from *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985.  He additionally found that Plaintiff had only mild limitations in her activities of daily living, social functioning, concentration, persistence, and pace, and no episodes of decompensation.  The only question for this Court is whether these findings are supported by substantial evidence.  While Plaintiff cites to various portions of her testimony to support her severity claim, a claimant may not rely solely on her own testimony or subjective complaints to establish severity.  It is undisputed that Plaintiff was diagnosed with depression, but a diagnosis alone is insufficient to establish a severe impairment or disability.  *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983).  "An impairment is severe if it significantly limits an individual's physical or mental abilities to do basic work activities; it is not severe if it is a slight abnormality . . . that has no more than a minimal effect on the claimant's ability to do basic work activities."  *Brunson v. Astrue*, 387 F.App'x 459, 461 (5th Cir. 2010) (citing *Stone*, 752 F.2d at 1101).

Under examination by her attorney, Plaintiff testified that her depression was so severe that it lowers her energy and mobility, causes her to cry uncontrollably twice a week, makes her excessively sleepy, and makes her feel like she wants to die.  In

6

assessing her credibility, the ALJ noted that Plaintiff "takes no psychotropic medications and she receives no professional mental health treatment." He also noted that she had no observable signs of depression in her consultative examinations. It is well-settled that these are relevant factors to consider in determining the severity of an alleged impairment. *Doss v. Barnhart*, 137 F. App'x 689, 690 (5th Cir.2005); *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir.1991); *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).[3]

Plaintiff maintains that the ALJ erroneously discounted her assertions that she was unable to afford medication. In support, she cites record evidence that she was given an Effexor trial. She also points to her testimony that she was recently prescribed Paxil but could not afford it. She also asserts for the first time on appeal that the ALJ should have considered her depression as a plausible explanation for her failure to seek treatment. *See e.g. Blakenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989) ("Appellant may have failed to seek psychiatric treatment for his mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.").

These arguments are unavailing given the totality of the evidence. In assessing her credibility, the ALJ expressly noted Plaintiff's testimony that she could not afford her medications, as well as the fact that she has "smoked a pack of cigarettes daily for the last 30 years." The Court further notes that Plaintiff's Effexor trial and the bulk of her

---

[3]ECF No. p. 8, 27.

depression complaints predate her alleged onset date by approximately two years. There are also no medical records of any kind from July 2007 though May 2009 corroborating her claims of ongoing depression or her testimony that she was prescribed Paxil. The only recent evidence referencing depression is a treatment note from her examining neurologist in July 2009 suggesting that she seek counseling, which Plaintiff maintains she did not pursue for financial reasons. Social Security regulations provide that a claimant may have justifiable cause for not following prescribed treatment if he is unable to afford it, and free community resources are unavailable. SSR 82-59, 1982 WL 31384 at * 4. Plaintiff does not indicate whether she sought such resources in this case. Nor does she point to any record evidence that her depression was so debilitating that it affected her willingness to seek treatment.[4]

Even if the Court were to find that the ALJ erred in failing to find Plaintiff's depression was severe, benefits were denied because Plaintiff failed to prove that her untreated depression was so severe that it prevented her from performing basic work activities. *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). Further, Plaintiff's claims were not summarily dismissed at step two. *See Herrera v. Astrue,* 406 F. App'x 899, 903 (5th Cir. 2010) (declining to remand where "case did not turn on a finding that [plaintiff's] impairments were not severe at step two"). The ALJ's limitation to unskilled work in his residual functional capacity assessment at step four adequately accounts for

---

[4]ECF No. 8, p. 27.

8

any functional limitations caused by her depression. No reversal or remand is warranted on this issue.

> 2. **Whether the ALJ applied the correct standards in evaluating the medical source opinions.**

As her next point of error, Plaintiff alleges that the ALJ failed to apply the proper legal standards in evaluating the medical opinions of record. McKinney does not identify any particular regulation that was violated, but generally asserts that the ALJ failed to properly weigh the medical opinions submitted by consulting examiners, Drs. Christopher Reed and Mohammed Assaf, and non-examining physician, Dr. Carol Kossman. "The interpretation of an expert's opinion is committed to the discretion of the ALJ, however." *Smith v. Chater*, 68 F.3d 471 (5th Cir. 1995). Substantial evidence supports the ALJ's findings here.

In the only comprehensive physical examination of record, Dr. Reed noted in September 2009 that Plaintiff presented with primary complaints of a "stroke and inability to walk." During the examination, Plaintiff related that she had a stroke on her right side in May 2009 resulting in two hospitalizations. Although hospital records indicate that Plaintiff was diagnosed with phenytoin toxicity and her symptoms improved at discharge, she advised Dr. Reed that she continues to experience decreased vision, slurred speech, and mild weakness in her arms and legs secondary to her cerebrovascular accident (stroke). She also advised that she suffers from seizures every other day, though Dr. Reed noted that this was not one of her presenting allegations. In contrast to her

9

hearing testimony, Plaintiff also reported that she has one headache per week which lasts 15 to 20 minutes but is relieved by Advil. She can also only lift 5 pounds, stand for 30 minutes, and walk for 10 minutes. She also cannot drive a car, needs assistance dressing herself, and is unable to perform any household chores.[5]

On examination, Dr. Reed observed that Plaintiff was a well-developed, well-nourished female in no acute distress at 218 pounds. She had mild to moderate difficulty ambulating with an assistive device but was "not willing to ambulate without the assistive device." He also noted that she had mild difficulty getting on and off the examination table and out of a chair. But her speech was 100% understandable and her "funduscopic examination demonstrated no gross abnormality." She had no edema or swelling in her upper or lower extremities, and her grip and motor strength were largely normal. Her gait was "somewhat slow," but she had a normal range of motion in her elbows, forearms, thoracic, and lumbar spine, hips, knees, and ankles, and her sensory function was within normal limits. In his review, Dr. Reed found no evidence from an MRI and CT scan performed in May 2009 suggesting "an acute cerebral infraction and no objective data to support the diagnosis of a right cerebrovascular accident," or a seizure disorder. He also saw "very minimal residual deficit to the right side." While he opined that there "may be some minimal limitation secondary to lifting, carrying, or walking for any length of time," he found McKinney had no significant functional limitations with

---

[5] ECF No. 8, pp. 364-368.

sitting, seeing, hearing, or speaking. Plaintiff has never disputed Dr. Reed's examination findings which the ALJ properly accorded significant weight.[6]

The ALJ also assigned weight to the neurological consult performed by Dr. Assaf in November 2009. As with Dr. Reed, Plaintiff told Dr. Assaf that she had a history of stroke affecting the right side of her body resulting in weakness, numbness, and tingling of the right hand and fingers. She also stated that she occasionally stutters, has difficulty swallowing and walking, and uses a cane. On examination, Dr. Assaf saw no edema or deformities in Plaintiff's lower extremities. Her speech was clear and fluent; she was also alert, oriented, and responsive. Despite mild limping on the right side, Dr. Assaf noted that her "sensory, gait and coordination are normal and there is no drift of both upper extremities."[7]

In weighing their medical opinions, the ALJ properly found that the examination findings of Drs. Reed and Assaf were consistent with the residual functional capacity assessment of Dr. Kossman and the evidence as a whole. In November 2009, Dr. Kossman opined that in an eight-hour workday, Plaintiff could stand and sit for six hours; occasionally lift 20 pounds; and, frequently lift 10 pounds. She also had no manipulative, visual, or communicative limitations; occasional postural limitations; and, her only environmental limitations were to avoid hazards and dangerous machinery.

---

[6] *Id.*

[7] ECF No. 8, pp. 370-371.

Plaintiff maintains that Dr. Kossman based her assessment solely upon the notes of a state agency examiner without review of the medical evidence. However, her assessment clearly reflects she relied on the findings of both Drs. Reed and Assaf, which the ALJ found were "consistent with a light range of work, with some additional non-exertional limitations."[8]

Plaintiff nevertheless claims that the ALJ failed to adequately address her "unrebutted need for a handheld assistive device for even minimal ambulation."[9] Relevant law provides that "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-9p, 1996 WL 374185 (S.S.A.) at * 7. There is no such documentation in this case. As noted by the ALJ, Plaintiff left the hospital following her stroke in May 2009 without any assistance despite her complaints that she has "trouble walking." And, although both Drs. Reed and Assaf observed Plaintiff with a cane during the examination, neither opined that it was medically necessary. As noted *supra*, Plaintiff was unwilling, in fact, to ambulate without the cane during Dr. Reed's examination. Social Security regulations provide that:

---

[8]ECF No. 8, pp. 24, 372-400.

[9]ECF No. 10, p. 1.

> When an individual with an impairment involving a lower extremity or extremities uses a hand-held assistive device, such as a cane, crutch or walker, ***examination should be with and without the use of the assistive device*** unless contraindicated by the medical judgment of a physician who has treated or examined the individual. The individual's ability to ambulate ***with and without the device*** provides information as to whether, or the extent to which, the individual is able to ambulate without assistance. The medical basis for the use of any assistive device (e.g., instability, weakness) should be documented.

20 C.F.R. Pt. 4, Subpt. P, App. 1, § 1.00 J(4) (emphasis added). Thus, while Plaintiff may use a cane, the record contains no evidence regarding its medical necessity or a physician's report requiring her to do so. Further, with regard to Plaintiff's allegations of a stroke and gait disturbance, the ALJ explained in relevant part as follows:

> . . . .There is no evidence of sensory or motor aphasia resulting in ineffective speech or communication as the consultative examiner and treating sources were able to understand all of the claimant's speech. ***There is no evidence of significant and persistent disorganization of motion function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station***.[10]

While the ALJ could have reached a different conclusion based on Plaintiff's subjective complaints, it is not the role of this Court to re-weigh the evidence. The ALJ applied the proper legal standards in evaluating the medical opinions, and his findings are substantially supported by the evidence.

### 3. Whether substantial evidence supports the ALJ's residual functional capacity assessment.

As her final point of error, Plaintiff contends the ALJ's residual functional capacity assessment is not supported by substantial evidence because it failed to include limitations flowing from her headaches, hypertension, obesity, and history of stroke,

---

[10]ECF No. 8, p. 26 (emphasis added).

13

despite finding these impairments to be severe at step two.

The sole responsibility for determining a claimant's residual functional capacity rests with the ALJ. 20 C.F.R. § 404.1546(c). A neutral reading of the ALJ's assessment reflects a narrative discussion of Plaintiff's ability to do sustained work-related activities in an ordinary work setting on a regular continuing basis in compliance with Social Security Ruling 96-8p. 1996 WL 374184, at *1, 3. 20 C.F.R. § 404.1546(c) (2009). The ALJ expressly assessed each of Plaintiff's impairments in accordance with the applicable listing or ruling. Based on the evidence as whole, the ALJ concluded that she had the residual functional capacity to perform light, unskilled work, except she cannot climb ladders, ropes, or scaffolds, or work around unprotected heights or dangerous machinery. In making this determination, the ALJ found that Plaintiff's allegations and complaints were not entirely credible. When a claimant's statements concerning the intensity, persistence or limiting effects of symptoms are not supported by objective evidence, the ALJ has the discretion to make a finding on their credibility. *Foster v. Astrue*, 277 F. App'x. 462 (5th Cir. 2008). The ALJ explained as follows:

> The undersigned considered the claimant's allegations and complaints and finds her less than fully credible. She testified she has headaches, high blood pressure, heart problems, leg pain, seizures every day, and that she had a stroke. If she has medications she will only have 2 to 3 seizures per week. The undersigned notes Dr. Reed diagnosed her with a seizure disorder but related there was no objective evidence to support the diagnosis. Dr. Assaf determined her sensory, gait and coordination were normal and there was no drift of both upper extremities and he further determined her white matter changes seen in [an] MRI on her right side did not explain her symptoms on the right side. . . . She has difficulty getting in the shower so she can only keep up with her hygiene once a week. The undersigned notes Dr. Reed related she demonstrated good personal

>   hygiene. The clamant has friends that do her chores. She cannot lift more than 15 pounds with both hands. The undersigned notes she told Dr. Reed she can only lift 5 pounds. She testified she can walk a half mile, stand for 20 minutes, and sit for over an hour but she told Dr. Reed she can stand for 30 minutes and walk for 10 minutes. In addition, Dr. Reed significantly determined she had a normal range of motion of the elbows, forearms, wrists, cervical, thoracic, and lumbar spine as well as the hips, knees, and ankles. She stated she cannot concentrate for more than 45 minutes but Dr. Reed determined she was able to follow simple directions. She testified she constantly has headaches which last for 20-30 minutes. This is inconsistent with her conveying to Dr. Reed she has 1 headache per week which lasts for 15 to 20 minutes. The undersigned notes the claimant's allegations are clearly inconsistent from one point to another and the undersigned accords them little weight.[11]

Plaintiff does not dispute these inconsistencies on appeal. She maintains simply that her own testimony and subjective complaints support a finding of greater functional limitations than those assigned by the ALJ.

While there may be conflicting evidence regarding Plaintiff's functional limitations, conflicts in evidence are for the Commissioner to resolve, not the courts. *See Newton*, 209 F.3d at 452. No medically acceptable clinical or laboratory diagnostic techniques established the existence of impairments which could be reasonably expected to produce the severity of pain that Plaintiff alleges. No examining or consulting physician has ever opined that Plaintiff's headaches, obesity, or hypertension would impact her ability to perform work-related activities beyond the limitations indicated in the ALJ's residual functional capacity assessment. *See Bordelon v. Astrue*, 281 F. App'x 418, 422 (5th Cir. 2008) (distinguishing between diagnosed impairments and functional limitations caused by those impairments). By Plaintiff's own account, her headaches are

---

[11]ECF No. 8, p. 27 (internal record citations omitted).

relieved by Advil.  The mere fact that working may cause Plaintiff pain or discomfort does not mandate a finding of disability, particularly where substantial evidence indicates that she can work despite being in pain or discomfort, as it does here.  *See Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980); *Johnson v. Heckler*, 767 F.2d 180, 182 (5th Cir. 1985).  The arguments regarding this claim are without merit.

In sum, the undersigned's review of the record compels a finding that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision.  For these reasons, it is the opinion of the undersigned United States Magistrate Judge that Defendant's Motion to Affirm the Commissioner's Decision be granted; that Plaintiff's appeal be dismissed with prejudice; and, that Final Judgment in favor of the Commissioner be entered.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi*, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections.  Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and

recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

      This the 31st day of January 2014.

                                                      /s/  Linda R. Anderson
                                      UNITED STATES MAGISTRATE JUDGE